1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                         **DISTRICT OF NEVADA**

10

11   STEPHEN ISSOD,                    )          2:05-CV-939-BES-RJJ
                                        )
12                   Plaintiff,         )
                                        )          **ORDER**
13          v.                          )
                                        )
14   DIAGEM RESOURCES CORPORATION, et   )
     al.,                               )
15                                      )
                     Defendants.        )
16   _____)

17          Currently before this Court is Diagem Resources' ("Defendant") Motion to Dismiss for

18   Lack of Personal Jurisdiction (#25), which was filed on February 16, 2006. Plaintiff failed to

19   file an Opposition.

20                              **I. BACKGROUND**

21          The sequence of events preceding this lawsuit began in 1997, when Mineracao Juina

22   Mirim Ltda. ("MJML") obtained certain mining and mineral rights to a Brazilian diamond mine

23   through a governmental concession.  After obtaining this mining concession, MJML entered

24   into an agreement with Juina Mining Company, Inc. ("JMCI"), a Nevada corporation, whereby

25   JMCI acquired a 70% interest in the concession. This agreement was governed by Nevada

26   law.

27          Subsequently, MJML sold its remaining 30% interest in the concession, transferring

28   16% to Paragon Financial Services, LLC ("Paragon") and 14% to various other royalty holders,

                                          1

including Plaintiff. Paragon then assigned its interest in the concession to JMCI and Juina Mining Corporation ("JMC"). As a result of this assignment, JMCI and JMC held an 86% working interest in the Brazilian concession. JMCI and JMC then formed Juina Diamond Mieracao Limitada ("JDML") under the laws of Brazil to hold this 86% working interest. The ownership of JDML was ultimately split: JMCI owned 99% of the shares and Airton Reiss, the manager of JDML, owned the other 1%.

On October 19, 2000, JMCI entered into two agreements with a Canadian corporation, Emerging African Gold ("EAG"). The first agreement was a purchase agreement under which JMCI agreed to sell 51% of its interest in JDML to EAG. This purchase agreement was subject to the laws of Canada and any litigation arising out of the agreement were to be resolved in Quebec. The second agreement was a joint venture agreement and was also subject to Canadian law. In this agreement, the parties acknowledged that JDML had sole ownership of the exploration concession, "except for a 14% working interest in favor of certain third parties," including Plaintiff's alleged interest. (Motion (#25), Ex. C at 2).

Approximately 19 months after the agreements between JMCI and EAG were executed, Defendant, a Canadian corporation, merged with EAG. As a result of this merger and pursuant to the terms of the joint venture agreement, Defendant became the new operator on the mining project and acquired any interest that EAG had in such concession.

Plaintiff alleges that after the merger, Defendant failed to properly carry out its duties as operator of the project. Specifically, Plaintiff alleges, inter alia, that Defendant failed to file required environmental impact reports with the Brazilian Institute for the Environment and Renewable Natural Resources ("IBAMA"). Plaintiff further alleges that because these environmental impact reports were not filed, IBAMA issued an embargo, precluding mining and exploration under the concession. Despite this embargo, Plaintiff alleges that Defendant continued operations, performing exploration, production, and mining on the property. After discovering these illegal operations, the Brazilian government enjoined all mining on the property pending further investigation. Because of this stoppage, Plaintiff's interest in the concession was allegedly rendered worthless, thus giving rise to this action.

1

## II. ANALYSIS

2       Under Local Rule 7-2(d), "[t]he failure of an opposing party to file points and authorities

3 in response to any motion shall constitute a consent to the granting of the motion." Applying

4 this Rule, when a party is served with a motion to dismiss pursuant to Fed. R. Civ. P. 5(b) and

5 fails to file a timely response, this Court may dismiss the case. Ghazali v. Moran, 46 F.3d 52,

6 54 (9th Cir. 1995); Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003) (noting that

7 Ghazali was explicitly limited to Rule 12 motions to dismiss). This Court has broad discretion

8 to enter a dismissal under these circumstances. Ghazali, 46 F.3d at 53. Accordingly, the Court

9 grants Defendant's Motion to Dismiss (#25) because Plaintiff failed to file an Opposition to

10 such Motion. See e.g., Paradise v. Robinson & Hoover, 883 F. Supp. 521, 524 (D. Nev. 1995).

11       Although the Court has granted Defendant's Motion to Dismiss (#25) pursuant to Local

12 Rule 7-2(d), the Court will nevertheless conduct a personal jurisdiction analysis. To withstand

13 a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), Plaintiff need only make

14 a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to

15 avoid dismissal. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d

16 1114, 1119 (9th Cir. 2002) (citing Myers v. Barnett Law Offices, 238 F.3d 1068, 1071 (9th Cir.

17 2001). In determining whether Plaintiff has made such a showing, the Court accepts as true

18 Plaintiff's uncontroverted allegations, and resolves in Plaintiff's favor factual conflicts contained

19 in the parties' filings. Id.

20       The exercise of personal jurisdiction must be authorized by a rule or statute consonant

21 with the constitutional principles of due process. Where there is no applicable federal statute

22 governing personal jurisdiction, the Court applies the law of the state in which it sits. Yahoo!,

23 Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1205 (9th Cir. 2006). Nevada's long-arm

24 statute permits the exercise of jurisdiction to the same extent as the United States

25 Constitution. Rio Props. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). Accordingly,

26 the Court considers the constitutional principles of due process to determine whether

27 Defendant has minimum contacts with Nevada "such that the maintenance of the suit does

28 not offend traditional notions of fair play and substantial justice." International Shoe Co. v.

1   <u>Washington</u>, 326 U.S. 310, 316 (1945).

2       The aforementioned due process requirements are met if the Court can exercise either

3 general jurisdiction or specific jurisdiction over Defendant. <u>See e.g.</u>, <u>Reebok Int'l, Ltd. v.</u>

4 <u>McLaughlin</u>, 49 F.3d 1387, 1391 (9th Cir. 1995). The Court "may exercise general jurisdiction

5 only where 'continuous corporate operations within a state [are] thought so substantial and of

6 such a nature as to justify suit against [Defendant] on causes of action arising from dealings

7 entirely distinct form those activities.'" <u>Tuazon v. R.J. Reynolds Tobacco Co.</u>, 433 F.3d 1163,

8 1169 (9th Cir. 2006) (quoting <u>International Shoe</u>, 326 U.S. at 318). The Court "may exercise

9 specific jurisdiction where the suit 'arises out of' or is related to [Defendant's] contacts with the

10 forum and [Defendant] 'purposefully avails itself of the privilege of conducting activities within

11 the forum state, thus invoking the benefits and protections of its laws.'" <u>Tuazon</u>, 433 F.3d at

12 1169 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)). Applying these

13 principles, the Court now determines whether it may exercise personal jurisdiction over

14 Defendant.

15      **A. General Jurisdiction**

16       The standard for general jurisdiction is stringent; Defendant's contacts with the state

17 must "approximate physical presence." <u>Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.</u>, 223

18 F.3d 1082, 1086 (9th Cir. 2000). In other words, to be subjected to general jurisdiction,

19 Defendant must not only step through the forum's door, but must also "[sit] down and [make]

20 itself at home." <u>Glencore</u>, 284 F.3d at 1125.

21       Defendant's direct contacts with Nevada consisted of a few telephone calls and a

22 business trip by an individual who is now one of Defendant's executives. Such a tenuous

23 connection between Defendant and the state does not "approximate physical presence."

24 <u>Bancroft & Masters</u>, 223 F.3d at 1086; <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466

25 U.S. 408, 411–18 (1984) (holding that the defendant's purchase of helicopters, parts, and

26 accessories from a Texas corporation and the defendant's practice of sending employees to

27 Texas for training and consultation were insufficient to subject it to general jurisdiction in

28 Texas). Accordingly, the Court cannot exercise general jurisdiction over Defendant.

**B. Specific Jurisdiction**

Pursuant to Ninth Circuit precedent, the Court analyzes specific jurisdiction according to the following three-prong test:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum;
>
> (2) the claim arises out of or results from the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction is reasonable. Bancroft & Masters, 223 F.3d at 1086.

Plaintiff bears the burden of satisfying the first two prongs of the test. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If Plaintiff fails to satisfy either prong, then personal jurisdiction is not established. Id. Contrarily, if Plaintiff satisfies each of the first two prongs, the burden shifts to Defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. Id. (quoting Burger King, 471 U.S. at 476–78). For the following reasons, the Court finds that Plaintiff has failed to satisfy the first two prongs of the specific jurisdiction test.

### (1) Purposeful Availment or Direction

Under the first prong of the specific jurisdiction test, Plaintiff must establish that Defendant either purposefully availed itself of the privilege of conducting activities in Nevada, or purposefully directed its activities toward Nevada. Schwarzenegger, 374 F.3d at 802.  The proper application of these distinct concepts depends on the type of suit that is before the Court. A purposeful availment analysis is used in suits sounding in contract whereas a purposeful direction analysis is used in suits sounding in tort. Id. Because this suit sounds in contract, the Court conducts a purposeful availment analysis.[1]

To determine whether Defendant purposefully availed itself of the privilege of doing

---

[1] Even if the Court conducted a purposeful direction analysis in this case, specific jurisdiction would be lacking as any wrongful acts that Defendant allegedly committed were expressly aimed at Brazil, not Nevada, and Plaintiff has not alleged that Defendant knew harm would likely be suffered in Nevada as a result of such acts. See Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (explaining that the three part purposeful direction test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.").

1    business in Nevada, the Court considers evidence of Defendant's actions in Nevada, such as

2    executing or performing a contract in the state. Id. If Defendant has taken such actions, then

3    it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum

4    State, thus invoking the benefits and protections of its laws." Hanson v. Deckla, 357 U.S. 235,

5    253 (1958). Further, if Defendant has accepted the benefits and protections of Nevada's laws,

6    then it must "submit to the burdens of litigation in [this] forum." Burger King, 471 U.S. at 476.

7        The Court finds that Defendant did not take any actions that would invoke the

8    protections of Nevada's laws. None of the agreements into which Defendant directly entered

9    are governed by Nevada law. The merger agreement between EAG and Defendant is

10   governed by Canadian law as was the pre-merger purchase and joint venture agreements

11   between EAG and JMCI. Thus, neither Defendant nor EAG directly entered into any

12   agreements relating to Plaintiff's claims that would invoke the protection and benefits of

13   Nevada's laws.

14       Further, although Defendant, through its merger with EAG, entered into a joint venture

15   with JMCI, a Nevada corporation, this relationship, standing alone, is insufficient to establish

16   personal jurisdiction over Defendant. Doe v. Unocal, 248 F.3d 915, 924 (9th Cir. 2001) (finding

17   no purposeful availment where: (1) the contracts were negotiated out of state; (2) foreign law

18   governed the contracts; (3) performance of the contracts was to take place outside of the

19   U.S.); McGlinchy v. Shell Chemical Co., 845 F.2d 802, 816 (9th Cir. 1988); Burger King, 471

20   U.S. at 478 (stating that "an individual's contract with an out-of-state party alone [cannot]

21   automatically establish sufficient minimum contacts . . . ."). As was previously stated, the joint

22   venture agreement was governed by Canadian law, and Defendant's obligations under such

23   agreement were to be performed in Canada and Brazil, not Nevada. Thus, Defendant's

24   connection with Nevada through the JMCI joint venture is insufficient to establish purposeful

25   availment.

26       Considering the foregoing, the Court finds that Defendant has not purposefully availed

27   itself of the privileges of conducting activity within Nevada. Accordingly, the Court cannot

28   exercise specific jurisdiction over Defendant.

**(2) Relationship Between the Claim and the Forum-Related Activities**

To determine whether the second prong of the specific jurisdiction test is met, the Court employs a "but for" analysis. <u>Mattel, Inc. v. Greiner & Hauser GmbH</u>, 354 F.3d 857, 864 (9th Cir. 2003). In other words, the Court determines whether but for Defendant's contacts with Nevada, would Plaintiff's claims have arisen?

Plaintiff nowhere alleges that the causes of action enumerated in the Complaint arise out of or relate to Defendant's activities within Nevada. The purchase and joint venture agreements between JMCI and EAG and the merger agreement between Defendant and EAG were subject to the laws of Canada. Defendant Diagem's obligations under these contracts were to be performed abroad in Canada and Brazil. <u>Glencore</u>, 284 F.3d at 1123–24 (finding no but for causation where the contracts giving rise to the dispute were negotiated abroad, involved foreign companies, and required performance abroad). Thus, Plaintiff's claim does not arise out of conduct directed at or related to Nevada, and due process therefore forbids the exercise of specific jurisdiction.

**III. CONCLUSION**

Based on the foregoing,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#25) is granted and that Defendant Diagem Resources Corporation is dismissed from this case.

DATED this 23rd day of June, 2006.

_____
UNITED STATES DISTRICT JUDGE